**NEW YORK LIFE INSURANCE CO.,**
**Plaintiff-Appellee,**

v.

**CONNECTICUT DEVELOPMENT AU-**
**THORITY and Minority Equity**
**Capital Corp., Defendants,**

**and**

**Rupert C. Sterling, Defendant-Appellant.**

**No. 447, Docket 82–7541.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1982.
Decided Feb. 9, 1983.

Carol Y. Kendrick, New York City (Robert A. Kirtland, New York City, on the brief), for plaintiff-appellee.

Paulette M. Owens, New York City, for defendant-appellant.

Before FRIENDLY, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Rupert C. Sterling appeals from a judgment of the United States District Court for the Southern District of New York, Robert L. Carter, Judge, in this interpleader action brought by plaintiff New York Life Insurance Co. ("New York Life") pursuant to 28 U.S.C. § 1335 (1976) to adjudicate conflicting claims to the cash surrender value of two insurance policies. The judgment, which recited that it was entered with the consent of Sterling, included provisions ordering payment of the cash surrender value of the policies to Sterling, discharging New York Life from any liability to Sterling "with respect to any claim regarding" the policies, and ordering Sterling to discontinue his pending state court action against New York Life. Insofar as the judgment determined the liability of New York Life to pay the cash surrender value of the policies, we affirm. Because the basis for the recitation of Sterling's consent to the discharge of claims other than his contract claim for the cash surrender value of the policies is not clear to us from the record, we remand to the district court for clarification.

## I. BACKGROUND

The two insurance policies in question, with a total face value of $500,000, were issued by New York Life to Sterling in 1979. According to New York Life's complaint, one policy listed as one of the beneficiaries defendant Connecticut Development Authority ("CDA"), "as its interest may appear"; the other policy listed as one of its beneficiaries defendant Minority Equity Capital Corp. ("MECCO"), "as its interest may appear." The complaint asserts that the quoted phrase is traditionally used in the insurance industry to describe an assignee or creditor.

The present controversy arose in 1982 when Sterling requested that New York Life pay him the cash surrender value of the two policies. New York Life alleges that it then contacted CDA and MECCO

with regard to their interests in the policies and was advised that each claimed an interest in the policy naming it and refused to release its interest, and that accordingly New York Life refused to pay Sterling the cash value of the policies. Sterling thereupon commenced an action in New York State Supreme Court, seeking to recover the cash value of the policies and seeking damages on the ground that New York Life's refusal to pay had wrongfully interfered with Sterling's economic relationships and caused him to lose advantageous business relationships. Sterling demanded damages totaling $3,000,000.[1]

On May 20, 1982, New York Life commenced the present interpleader action against Sterling, CDA, and MECCO, depositing the insurance policies with the court and alleging that neither CDA nor MECCO was a party to Sterling's state court action and that that action could expose New York Life to multiple liability on the policies. The "WHEREFORE" clause of the complaint included requests

1. That each of the defendants be restrained from commencing or continuing any action against the plaintiff for recovery of any benefits under said policies or any part thereof, and

2. That the defendants be required to interplead and settle between themselves their rights to any benefits under the policy, and that plaintiff be discharged from all liability to any of the defendants, except in the amount and manner that the court may deem the defendant or defendants may be entitled to under the terms of the policy; . . . .

New York Life immediately sought temporary injunctive relief pursuant to 28 U.S.C. § 2361 (1976), restraining all defendants, and particularly Sterling, from prosecuting any action "affecting the property involved in this interpleader action," and sought a permanent injunction against any suit by the defendants "which may affect the property on deposit." (Order To Show Cause dated May 25, 1982, at 2.)

At the May 28, 1982 hearing on New York Life's injunction motion, only counsel for New York Life and counsel for Sterling appeared. The district judge announced that he had received word from CDA that it no longer asserted any claim with respect to the policy that had listed it as a beneficiary. As to MECCO, no one appeared or had communicated with the court in its behalf. New York Life therefore proposed that a default be entered as to both CDA and MECCO and that it pay Sterling the cash value of the policy that named CDA within a few days and pay Sterling the cash value of the policy that named MECCO when MECCO's default had become established. After a colloquy among the court, P. Michael Madden, appearing as New York Life's counsel, and Paulette M. Owens, Sterling's counsel, in which Owens appeared to agree to this course of action, the court requested, and Madden undertook to submit, a proposed order.[2]

---

1. New York Life's complaint in the present action states that Sterling sought $4,000,000 in damages. Sterling's state court complaint, however, asserted three claims, each seeking "$1,00,000.00" [sic] or "a total of $3,000,000.00." *Sterling v. New York Life Insurance Co.*, No. 10751/82 (Complaint).

2. The pertinent colloquy at the May 28 hearing was as follows:

MR. MADDEN: . . .

. . . .

Given the posture of the case, your Honor, what I would like to do is enter and file with this Court the order to show cause and the affidavits of service as well as the return on the service of the summons and complaint. If counsel for Sterling is willing, we will enter a default judgment against those individuals,

Minority and Connecticut, on the order to show cause, the injunction and the discharge. Unfortunately, I think that both now defaulting defendants still have not defaulted on the summons and complaint, that they have twenty days to answer that, and, as of right now, Mr. Sterling has no cross-claims against any individuals here.

What it would seem to me advisable is if we can agree to discharge the matter, I think we can agree to pay the Connecticut Development Authority money by having the CDA release their interest, if any, and we will issue a check in the next couple of days.

If you are agreeable to a discharge on that—

MS. OWENS: Yes.

THE COURT: Well, you certainly can do that, because they have notified me, notified

On June 16, 1982, the court entered the judgment that is the subject matter of the present appeal.[3] After reciting preliminary facts, including the defaults of CDA and MECCO, the judgment stated in pertinent part as follows:

The defendant, Rupert C. Sterling, appearing through counsel, consented to the entry of an order granting the relief sought by the plaintiff, New York Life Insurance Company, in this action pursuant to 28 U.S.C. §§ 1335, 2361 and F.R. Civ.P. 22 and 65, conditioned upon payment of the cash surrender values of the two life insurance policies on deposit with this court. It is therefore

ORDERED that each of the defendants in this case, Connecticut, Minority Equity and Rupert C. Sterling be and hereby is, pursuant to 28 U.S.C. §§ 1335 and 2361, permanently enjoined from instituting and/or prosecuting any proceeding in any state or United States court affecting the property involved in this interpleader action and on deposit with this court; and it is

FURTHER ORDERED that the plaintiff, New York Life, be and hereby is discharged from any liability to any of the defendants in this action with respect to any claim regarding New York Life

chambers—I think the conversation was that they have some question as to whether they could prevail, and therefore they are withdrawing.

So I don't see, as far as they are concerned, the technicalities—the complaint is out. They have indicated to me that they would default. I haven't heard from Minority Capital, although my impression is that under the circumstances of this matter in which they are here, they are required to come here on the order to show cause.

I am of the impression that this may very well be sufficient, to note a default generally.

MR. MADDEN: Your Honor, if I may, I think all agree that they are definitely in default of the relief requested in the order to show cause which you signed. The basic problem is, have they and will they default some fifteen days from now?

THE COURT: It appears to me that there are several things. I don't believe, as far as you brought the matter here—I don't think you have an interest. Your interest was that you brought the insurance policy here, and you want a determination as to who gets the proceeds.

MR. MADDEN: Yes, your Honor.

THE COURT: And it seems to me the only interested parties now in the matter are Sterling and perhaps the Minority Equity Capital Corporation. You haven't got an interest in the matter. You are going to pay the proceeds to whomever; is that right?

MR. MADDEN: Absolutely, your Honor.

THE COURT: So I think what ought to be done—you agree—I will sign an order for one of the policies. When was the complaint filed? It was filed the same day as the order to show cause?

MR. MADDEN: May 20th, your Honor, was the filing date.

THE COURT: Well, I don't know whether to hold it, but we probably can hold it until we get some further word from Minority Equity Capital Corporation and dispose of the

matter. But I think an order insofar as one of the policies is concerned, on consent, might well be filed as soon as you can.

MS. OWEN: Yes, your Honor. So would we be getting an order subject to or having them pay subject to any defenses by the—

THE COURT: No. The Connecticut Development, whatever their interest in the policy is they turn over to you. I think that they have given up. Connecticut has indicated that they are not making any claim, and the only reason New York Life is involved in this is because they are afraid they would pay it to you and then they would be placed in a position that Connecticut would sue them because they would have paid it and should not have, and the[n] have the same problem in regard to Minority Equity Capital.

What Mr. Madden is now concerned about, he is concerned that Minority Equity, even though it has defaulted on this matter, has not defaulted in the case in chief, and he wants to be prudent. He is not quite willing to give up on that.

So I won't have to deal with this again, an order ought to be drafted releasing one of the policies or ordering the clerk to release one of the policies, and then a conditional release that if Minority Equity Capital has not responded or asserted their claim on or before June 10th, to release the other.

Is that agreeable?

MS. OWENS: Yes.

THE COURT: All right.

MR. MADDEN: We will submit it shortly. (Transcript at 2–6.)

3. In the meantime, on June 8, Sterling had moved to dismiss the action pursuant to Fed.R. Civ.P. 12(b)(6) on the ground that since CDA and MECCO had defaulted, only Sterling claimed the proceeds of the insurance policies, and hence the interpleader action could not be maintained. The motion was denied.

policies # 36 815 574 and # 36 750 645 on the life of Rupert C. Sterling except as is ordered by this court; and it is

FURTHER ORDERED that the defendant Rupert C. Sterling discontinue and or dismiss the action in the Supreme Court of the State of New York for the County of New York, entitled Rupert C. Sterling against the New York Life Insurance Company, Index No. 10751/82;

. . . .

Sterling has appealed from the judgment,[4] contending principally (1) that he did not consent to the judgment, and (2) that any interpleader judgment was inappropriate because there was only one claimant, *i.e.,* Sterling, to the fund.

## II. DISCUSSION

A. *Interpleader Relief as to the Cash Surrender Value of the Policies*

■ Under 28 U.S.C. § 1335, a district court has jurisdiction of any civil action of interpleader involving money or property worth $500 or more where two or more adverse claimants, of diverse citizenship as defined in 28 U.S.C. § 1332,[5] "are claiming or may claim to be entitled to such money or property," if the plaintiff has deposited the money or property with the court. In such an action, the court is to "hear and determine the case, and may discharge the plaintiff from further liability," may enter a permanent injunction restraining the

claimants from proceeding in any state or United States court in a suit to affect the property, and may "make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. Normally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants; this bifurcation is not mandatory, however, and the entire action may be disposed of at one time. *See* 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶¶ 22.14[1], [2] (2d ed. 1982).

■ The proceedings below were largely within this framework. The insurance policies listed, on their respective faces, CDA and MECCO as beneficiaries, and New York Life's complaint alleged that CDA and MECCO had refused to release their interests. In response to New York Life's injunction motion, Sterling acknowledged that CDA and MECCO had refused to release their alleged interests in the policies. (Affirmation of Paulette M. Owens, dated May 28, 1982, ¶ 11 ("Owens Aff.").) In these circumstances, CDA and MECCO were properly designated as "adverse claimants" who "may claim" the proceeds of the policies. Their subsequent defaults did not make the interpleader action inappropriate but merely expedited its conclusion by obviating the normal second stage.[6]

4. On June 28, Sterling moved pursuant to Fed. R.Civ.P. 59(e) to alter or amend the judgment, arguing that he had not consented to it and rearguing the contentions advanced in support of his earlier unsuccessful motion to dismiss, *see* note 3 *supra.* New York Life states that the motion was untimely and that no decision was rendered on it. Both statements are inaccurate. A Rule 59(e) motion normally must be made within ten days after entry of the judgment. The judgment was entered on June 16, and the tenth day thereafter was June 26; since, however, June 26 was a Saturday, the period for serving the Rule 59(e) motion ran until Monday, June 28. Fed.R.Civ.P. 6(a). The motion was, therefore, timely. The district court denied the motion on July 8.

5. The requisite diversity exists if at least two of the adverse claimants are citizens of different states, without regard to the citizenship of oth-

er claimants or the stakeholder. *See State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203–1204, 18 L.Ed.2d 270 (1967). In the present case it was alleged that Sterling was a citizen of New York and that CDA was an agency of the State of Connecticut. As a political subdivision of the state that is empowered to sue and be sued, *see* Conn.Gen.Stat.Ann. §§ 32-11a(a), 32-23e(17) (West 1982), CDA is a citizen of Connecticut for purposes of diversity of citizenship. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 97, 92 S.Ct. 1385, 1389, 31 L.Ed.2d 712 (1972).

6. Given the defaults of CDA and MECCO, the propriety of their designation as adverse claimants would be a good deal less clear were it not for Sterling's acknowledgment that they had refused to release their interests. *See Libby, McNeill & Libby v. City National Bank,* 592 F.2d 504, 507 (9th Cir.1978); 3A J. Moore & J.

Judgment discharging the stakeholder in an interpleader action may, of course, be delayed or denied if there are serious charges that the stakeholder commenced the action in bad faith. *See* 3A J. Moore & J. Lucas, *supra,* ¶ 22.02[1], at 22–7; *cf. Companion Life Ins. Co. v. Schaffer,* 442 F.Supp. 826 (S.D.N.Y.1977). In the present action, Sterling's opposition to New York Life's injunction motion charged that New York Life had listed CDA and MECCO as beneficiaries of the policies without Sterling's knowledge or consent (Owens Aff. ¶ 7), for reasons of its own "greed and self-interest" (*id.* ¶ 23). Had CDA or MECCO participated in the action and contested Sterling's right to receive the cash surrender value of the policies, and had Sterling pursued his assertions as to New York Life's bad faith, the district court would have been required to deal with these contentions in determining whether New York Life was entitled to any discharge from liability. As matters developed, however, an adjudication as to Sterling's allegations of New York Life's bad faith was not required in order to determine entitlement to the cash surrender value of the policies, because CDA and MECCO defaulted and Sterling consented to the entry of an order extinguishing their claims and requiring New York Life to pay that value to Sterling. *See* note 2 *supra.* In these circumstances, the judgment was appropriate insofar as it determined the rights of the parties to the cash surrender value of the insurance policies and New York Life's liability to pay such value. We affirm the judgment to that extent.

### B.  *Extinguishment of Sterling's Other Claims*

The June 16 judgment, however, affected more than just the various claims to the cash surrender value of the policies. It required Sterling to discontinue his state court action, which, in addition to claiming entitlement to the cash surrender value of the policies, also purported to allege tort causes of action for consequential damages resulting from New York Life's interference with Sterling's economic business relationships. The propriety of that part of the judgment which required Sterling to forgo these tort claims is not clear.

While we are of the view that it would have been within the district court's power and discretion to adjudicate Sterling's claims for consequential damages arising out of New York Life's allegedly tortious withholding of the cash surrender value of the insurance policies, *see* 28 U.S.C. § 2361; *Francis I. du Pont & Co. v. Sheen,* 324 F.2d 3 (3d Cir.1963), and thereafter to enjoin permanently Sterling's prosecution of such claims, *see Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75, 82–83 (10th Cir.1955), *cert. denied,* 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853 (1956), the district court made no such adjudication. Rather, it enjoined Sterling's pursuit of his tort claims on the basis that Sterling had consented to such an injunction. Such consent could justify an injunction, *see Francis I. du Pont & Co. v. Sheen, supra,* but Sterling's consent to the extinguishment of his tort claims is far from clear on the record before us.

The first paragraph of the judgment, quoted in Part I above, appears to attribute the consent to Owens's statements at the May 28 hearing and to interpret that consent as encompassing all of the relief sought by New York Life in the action. The transcript of the hearing, however, which is set out in pertinent part at note 2 *supra,* is not so descriptive. There was no reference during the hearing to New York Life's complaint or to its demand for a discharge of "all liability." Nor was there any mention of Sterling's state court action or his tort claims. While Madden, New York Life's attorney, suggested that the parties might "agree to discharge the matter" (Transcript at 3), the record does not indicate that there was any explication that "the matter" was intended to include Sterling's state court claims for consequential damages for tort. Rather, New York Life's

---

Lucas, *supra,* ¶ 22.08[1], at 22-49 to 22-50 ("If one of two parties defendant has withdrawn his

claim ... interpleader relief is not warranted.").

interest in "the matter" was repeatedly described as only that of a stakeholder:

> THE COURT: ... I don't believe, as far as you brought the matter here—I don't think you have an interest. Your interest was that you brought the insurance policy here, and you want a determination as to who gets the proceeds.
>
> MR. MADDEN: Yes, your Honor.
>
> ....
>
> THE COURT: ... [T]he only reason New York Life is involved in this is because they are afraid they would pay it to you and then they would be placed in a position that Connecticut would sue them
>
> ....

*Id.* at 4–6.

These restrictive descriptions of the interest of New York Life were consistent with statements in the papers served and filed by New York Life in support of its injunction motion. The order to show cause leading to the hearing contained a temporary restraining order against Sterling's pursuit of his state action, and gave notice that New York Life sought a permanent injunction against any action "which may affect the property on deposit" (Order To Show Cause dated May 25, 1982, at 2); but it did not state that New York Life sought a permanent injunction against Sterling's pursuit of his entire state court action or of his tort claims. Likewise, neither Madden's affirmation nor New York Life's memorandum of law in support of injunctive relief mentioned Sterling's tort claims. Indeed, the latter document stated that "New York Life's interest in this matter is that of a stakeholder only."

Thus, while, as indicated in Part II.A. above, we think it plain that Sterling consented to the adjudication of rights to the cash surrender value of the policies, it is not apparent to us from the present record that Sterling consented at the hearing to the discontinuance of his state court tort claims. We are left to speculate whether the finding of consent was based on the events at the hearing or on some other basis. It appears, for example, that the court requested at the hearing that an appropriate order be submitted to it, and Madden stated that he would submit one. If the judgment signed by the court was submitted by New York Life on notice to Sterling and Sterling acquiesced, this might have provided a basis for a finding of consent.[7] Or, it may be that, in some manner of which we are not aware, Sterling consented "that plaintiff be discharged from all liability," as New York Life demanded in the "WHEREFORE" clause of its complaint.

■ We therefore remand to the district court for clarification of the basis for the finding of Sterling's consent to the discontinuance of his tort claims, or for an indication by the court of such other action as it may deem appropriate in lieu of clarification, such as a supplementation of the record or the entertainment of a motion pursuant to Fed.R.Civ.P. 60(b)(1). Jurisdiction is retained in the Court of Appeals.

FRIENDLY, Circuit Judge, dissenting:

With great respect, I see no need for a remand in this case. Judge Carter was in a far better position than we are to determine whether Sterling's counsel consented to an order requiring discontinuance of the New York action. He had the "feel of the case which no appellate printed transcript can impart." *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947) (Black, J.). His finding of consent, manifested by his signing the order and reaffirmed by his denial of Sterling's motion under F.R.Civ.P. 59(e), was a finding of fact protected by the "unless clearly erroneous" rule. F.R.Civ.P. 52(a). Sterling did not challenge the state-

---

7. Ironically, at oral argument of this appeal, New York Life's counsel, Carol Y. Kendrick, stated that New York Life had not submitted an order and that the judgment had been drafted by the court; Sterling's counsel, on the other hand, stated that the judgment had been submitted to the court by New York Life. Sterling's counsel stated, however, that the judgment had been submitted as an attachment to the May 25 motion for a preliminary injunction, a timing we think unlikely in light of the judgment's recitation of events at the May 28 hearing on the motion.

ment that he had consented to the judgment by a motion under F.R.Civ.P. 59(e) until after he had taken advantage of it to obtain the payment of the cash surrender value of the policies to his attorney. Then his motion sought not merely deletion of the third paragraph of the judgment, relating to the New York action, but a striking of the whole of the judgment and an order dismissing the action, although, as the majority concedes, his attorney clearly had consented to the two preceding paragraphs. Judge Carter was amply justified in concluding as he must have done in denying the Rule 59(e) motion that Sterling and his attorney were seeking to play fast and loose with the court.

Beyond all this a remand is essentially futile. There was simply nothing to support Sterling's contention that New York Life had acted in bad faith in instituting an interpleader action with knowledge that there were no adverse claims; indeed, as the majority points out, Sterling acknowledged that CDA and MECCO had refused to release their alleged interest in the policies. If Judge Carter should alter his conclusion as to consent, which the majority wisely does not require, he would then be obliged to face this issue of New York Life's good faith and there can be no reasonable doubt what he would find. A finding of good faith on the part of New York Life would constitute a sufficient basis for enjoining Sterling's New York state court action, the premise of which is that New York Life had no legitimate reason for withholding payment of the cash surrender value of Sterling's policies. Such an injunction would apply the principles of interpleader enunciated by Judge Hastie in *Francis I. du Pont & Co. v. Sheen*, 324 F.2d 3, 6 (3 Cir.1963), which the majority cites with approval.

For these reasons I respectfully dissent.