**GENERAL ACCIDENT GROUP**

v.

**Anthony GAGLIARDI, et al.**

**Nancy SCHLACTER**

v.

**GENERAL ACCIDENT GROUP.**

Civ. Nos. N–79–116(PCD), N–83–555(PCD).

United States District Court, D. Connecticut.

Sept. 14, 1984.

Bruce M. Killion, Gillooly, McGrail & Carroll, New Haven, Conn., for plaintiff in Civ. No. N-79-116.

Albert F. Delaney, Jr., Delaney & Short, Hartford, Conn., and Jed Schlacter, Lauritano & Schlacter, New York City, for Schlacter in both cases.

Ralph Eddy, Regnier, Taylor, Curran & Langenbach, Hartford, Conn., for defendant in Civ. No. N-83-555.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

The rights and obligations of the parties are sufficiently definable to permit and they dictate a ruling dispositive of these consolidated actions in interpleader and for conversion. The prior orders dealing with pending discovery disputes are vacated, as further discovery, where the basic action is

over five years old without any discovery effort to date, will not alter the basic, undisputed facts, which are dispositive of the issues pleaded. For the reasons below, the interpleader action is found to present no claim within the jurisdiction of the court upon which relief can be granted and the conversion action is found to raise no claim not determined or precluded by the resolution of the interpleader action, nor to state any claim, based on sound legal authority, upon which relief may be granted. Both actions are, therefore, dismissed.

## FACTS

The facts and procedural history of these actions—particularly the thrice-closed but thrice-revived interpleader action—must be detailed.

### The Accident

On October 27, 1977, in Wallingford, Connecticut, the vehicle of Robert Delgreco was involved in a multiple car collision. At least nine persons in four vehicles sustained varying degrees of personal injury. General Accident Group (General), a Pennsylvania corporation, insured Delgreco for liability arising from the operation and use of his vehicle. The policy provided indemnity up to $20,000.00 for personal injury sustained by one individual, and $40,000.00 for all personal injuries resulting from an accident. Before any litigation, General settled one claim for $2,500.00.

### The Interpleader Action

Faced with the necessity of defending a suit against Delgreco filed in this court by Andreas A. Constable, operator of one of the vehicles involved, and the prospect of suit by other claimants seeking damages certain to exceed the balance of the policy coverage, General filed this action for interpleader and declaratory relief on April 24, 1979. The complaint refers both to 28 U.S.C. § 1335 (statutory interpleader) and Fed.R.Civ.P. 22 (rule interpleader). By reason of their potential claims against Delgreco, nine persons were named as parties defendant, of which eight remained:[1] An-

1. The complaint actually names nine defend-     ants/potential claimants. One defendant so

thony Gagliardi, a citizen of Connecticut; Elizabeth Golden and Paul Golden, both citizens of California; Andreas Constable, a citizen of Virginia; Heidi Frisch, a citizen of Florida; Nancy Schlacter, a citizen of New York; David Black, a citizen of Virginia; and Donald Nicoletti, a citizen of Connecticut. Diversity of citizenship existed among defendants and between all defendants and General.

General requested: (a) the defendants be ordered to interplead concerning their several claims; (b) further proceedings in the action of Constable against Delgreco be enjoined; (c) General be ordered to deposit the remaining $37,500.00 in court; and (d) that General thereupon be discharged.

*Responses to Interpleader Complaint*

Of the eight defendants, two, Paul and Elizabeth Golden, appeared and answered, expressly disclaiming any entitlement to the insurance proceeds. Two, Gagliardi and Nicoletti, neither appeared nor answered and were defaulted.

Of the four remaining defendants, Constable, Frisch and Black promptly appeared and answered, laying claim to a share of General's policy proceeds. Frisch also asserted a cross-claim against the three vehicle operators other than Delgreco. Additionally, Frisch and Black separately filed suits against Delgreco in this court, consolidated herewith.

Schlacter did not promptly appear nor answer the interpleader complaint. Until October 1983, she did not plead a claim to the proceeds. Neither has she filed suit against Delgreco. The record reflects that through counsel[2] she participated in a series of settlement negotiations under the supervision of Magistrate Eagan with counsel for the other parties, including General. Apparently, these discussions did not result in a resolution of her claim. Upon General's motion on November 27, 1979, after the statute of limitations[3] had expired as to claims against Delgreco, Schlacter and the other non-appearing defendants were defaulted.

*Settlement, First "Dismissal" and Reopening*

With an apparently closed claimant class, a settlement was reached in November 1979 between General and the three then-appearing defendants, each of whom had formally pleaded claims against the proceeds. A "Stipulation," apparently prepared at or after a settlement conference with Magistrate Eagan, was filed in May 1980, and approved as a stipulation for dismissal of the consolidated cases in December 1980. In it, the allocation of the remaining $37,500 among Constable, Frisch and Black was specified. General appears to have disbursed $37,500.00 in satisfaction of the compromises reached with those three claimants and all their claims have been dismissed.

In January 1981, however, the stipulation of dismissal was vacated (Fed.R.Civ.P. 60(b)) as to Schlacter because the default entered against her in November 1979 had been set aside by an order entered in July 1980, adopting a recommended ruling by the magistrate issued in May 1980, two weeks before the stipulation of dismissal was filed. The magistrate found that Schlacter had never been properly served with the interpleader complaint.[4] Jed Schlacter and local counsel presented the motion to set aside the default. An alternative argument raised by Schlacter—not addressed by the magistrate—in support of

named actually was the party with whom General had already settled for $2,500.00. Her motion for summary judgment, predicated on the settlement and the written release of her claim, has been granted.

**2.** Before appearances were entered by her brother, Jed Schlacter, *pro hac vice,* and local counsel, Schlacter was represented, without appearance, by her father, Irwin Schlacter.

**3.** Conn.Gen.Stat. § 52–584—two years for bodily injury actions.

**4.** A signed postal receipt reflects actual notice of the interpleader action to Schlacter. The record does not reflect any subsequent effort to serve Schlacter, nor has she since voiced any challenge to the court's jurisdiction over her.

her motion to set aside fully frames the present posture of this matter.[5]

Since January 1981, the sole issue in the interpleader and the subsequently consolidated conversion actions has been whether and to what extent Schlacter is entitled to relief where: (a) all the other interpleader defendants had disclaimed, been defaulted or been dismissed as parties; (b) in fulfillment of its agreement with the dismissed claimants, General had paid out the remaining proceeds of the policy; (c) General had not paid any sum into court, either voluntarily or by court order, and claims to have exhausted its obligation to indemnify by disbursing the full amount of its liability limit, $40,000.00; and (d) until October 1983, no formal claim had been pleaded by Schlacter.

The further procedural history will be sketched; but, as repeatedly observed, the ultimate and dispositive issues in this matter are those established when Schlacter's default was set aside in July 1980 and the dismissal was vacated as to her in January 1981.

*The Second Dismissal and Reopening—Subsequent Proceedings*

After January 1981, neither General nor Schlacter, the only remaining parties, took any action for over a year. In March 1982, pursuant to a local rule intended to weed out abandoned matters, the clerk notified counsel that the failure of any activity for the prior twelve months obliged him to dismiss the matter in thirty days absent some action or a satisfactory explanation. No statement or explanation was provided and a dismissal entered. Thereafter, when counsel for Schlacter noted her interest in an expeditious trial, the dismissal was reopened and the case referred to Magistrate Eagan for "pretrial."

A conference was held in April 1983. Neither counsel appears to have brought the incongruous status of this matter—i.e. the absence of: (a) a *res* on deposit; (b) a formal claim by Schlacter; and (c) any other claimants—to the attention of the court. The "pretrial" focused on "settlement," but no settlement was effectuated. An order essentially froze the matter until a further conference in June 1983. Such a conference was not scheduled. Neither General nor Schlacter called for it. In September 1983, the case was reassigned to the undersigned.

*The Third Dismissal and Reopening*

Awakened from their slumbers by an assignment for trial in October 1983, General and Schlacter began a barrage of filings, including a notice of dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(i) filed by General on September 18, 1983, and an answer filed by Schlacter on October 3, 1983, in which she purported to plead a claim to the insurance proceeds.

After a hearing on November 2, 1983, and subsequent briefing, the court, on February 16, 1984, confirmed General's notice

---

5. *Compare, e.g.,* Affidavit of Irwin Schlacter in Support of Motion to Vacate Default and to Permit Appearance as Co-Counsel, at ¶¶ 7, 10:
[I]t was your deponent's intention from the outset to limit unnecessary legal expenses and to attempt to reach an amicable settlement with General Accident without resorting to litigation. For that reason, and especially in light of the various discussions and communications with General Accident, a lawsuit [against Delgreco] was never commenced on behalf of Ms. Schlacter [within the limitations period] .... General Accident conveniently waited until after expiration of said statute before moving for default, even though it was fully cognizant of Ms. Schlacter's injuries, damages and interest herein. Such action by General Accident is surely reprehensible and should not be condoned by this court; ....

*and* Supplemental Affidavit of Jed Schlacter in Support of Motion to Set Aside Default, at ¶ 4:
[I]t was your deponent's belief and understanding that the primary purpose of the interpleader action was to stay the lawsuits that had been commenced, and not to exclude one whose claims had been undisputed and well-established; ....
*with* Frisch Memorandum in Opposition to Motion to Set Aside, at 2:
Defendant Frisch respectfully suggests that by failing to file a claim against Delgreco within the time prescribed by statute, defendant Schlacter has forfeited any claim to the funds that are the subject of this interpleader. No claim having been asserted by Nancy Schlacter as plaintiff, she may not share in the proceeds of the interpleader in any event.

of dismissal as effectually terminating the lawsuit since it was filed prior to the filing of an answer.

Schlacter then moved to vacate the notice of dismissal based on the circumstances surrounding the magistrate's order of April 1983. The notice of dismissal was vacated on March 22, 1984.

Accompanying this third resurrection were appropriate orders regarding the further joint processing of the interpleader action, together with a newly-filed, consolidated action for conversion brought by Schlacter against General.

### The Conversion Action

On October 28, 1983, on the eve of this court's hearing on the interpleader action, Schlacter filed suit against General for compensatory and punitive damages in the Southern District of New York. The suit alleges that General disbursed the proceeds of the Delgreco policy with full awareness of Schlacter's desire and intent to receive part or all of the monies at stake in the interpleader action, and without order or authority of the court, thus wrongfully converting property allegedly belonging to Schlacter. That case was transferred pursuant to 28 U.S.C. § 1404(a) and consolidated with the interpleader action. As the conversion and interpleader actions are premised on Schlacter's claim of right in the proceeds of General's policy, the two actions will be treated as one.

### Pending Motions

General has moved

(a) to dismiss Schlacter from the interpleader action;

(b) for summary judgment in the interpleader action;

(c) to quash or modify certain deposition subpoenas; and

(d) for summary judgment in the conversion action.

Schlacter has moved to compel discovery and for sanctions in both actions.

Disregarding the delinquency of the parties which alone would justify preclusion of further discovery, resolution of the single question—has Schlacter pleaded any legal basis for finding that she has any right in the proceeds of General's policy—will dispose of both suits.

## DISCUSSION

Interpleader is a procedural device, now incorporated by statute and rule into federal practice whereby one holding money or property may join in a single suit two or more persons who assert mutually exclusive or adverse claims to the money or property. 3A Moore's, *Federal Practice*, ¶ 22.01 at 22–4. The stakeholder may thus be protected from multiple liability and the vexation of multiple litigation. The claimants are protected, as all conflicting claims may be decided at once in the one action and a limited fund may be equitably distributed. Interpleader is permitted when, as here, the insurer of the liability of an alleged tortfeasor is or may be faced with claims aggregating more than its liability on the policy face. *State Farm & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

While there are many similarities between statutory interpleader, 28 U.S.C. § 1335, and rule interpleader, Fed.R.Civ.P. 22(1), there are significant differences between the two. 7 Wright & Miller, *Federal Practice and Procedure.*

Actions under the rule require that the plaintiff/stakeholder be diverse from all defendants/claimants, though the claimants need not be citizens of different states. 3A Moore's ¶ 22.04[2.1] at 22–17; *Home Indem. Co. v. Moore*, 499 F.2d 1202 (8th Cir.1974). The amount in controversy must exceed $10,000.00, independent of interest and costs. *Id.* In statutory interpleader, diversity of citizenship between two or more adverse claimants is sufficient; citizenship of the stakeholder is irrelevant. The amount in controversy need only be $500.00. 7 Wright & Miller § 1703.

In a statutory interpleader action, the stakeholder must deposit with the registry of the court the money or proceeds (the *"res"* or the "stake") that is exposed to multiple claims, or give appropriate bond. 28 U.S.C. § 1335(a)(2); *New York*

*Life Ins. Co. v. Connecticut Development Authority,* 700 F.2d 91 (2d Cir.1983). This is a jurisdictional requirement. The court generally will give the stakeholder an opportunity to comply before dismissing the action. 7 Wright & Miller § 1716. Rule interpleader has no jurisdictional requirement for deposit in court, *United States v. Coumantaros,* 146 F.Supp. 51 (S.D.N.Y. 1956), but the general equitable powers of the court permit, if not invite, the court to receive a deposit and thereafter discharge the stakeholder. *United States v. Henry's Bay View Inn, Inc.,* 191 F.Supp. 632 (S.D. N.Y.1960). A proceeding under the rule is governed by the usual service provisions of Fed.R.Civ.P. 4. In statutory interpleader, nationwide service of process is available under 28 U.S.C. § 2361, thus permitting a stakeholder to reach claimants in a number of states. 7 Wright & Miller § 1703.

■ In each case, two or more claimants must be "adverse" to each other. The claims must meet a minimal threshold of substantiality and the fear of multiple litigation or liability cannot be groundless. 7 Wright & Miller §§ 1704–1705. Statutory interpleader is available to any stakeholder as against whom "two or more adverse claimants ... are claiming *or may claim* to be entitled to" the stake. 28 U.S.C. § 1335 (emphasis added). Rule 22(1) similarly applies to situations in which the stakeholder "is or *may be* exposed to double or multiple liability." (Emphasis added). To secure a prompt and inclusive determination in a single action of the rights of all parties claiming an interest in the stake, courts should not hesitate to allow interpleader when some or all of the claims are prospective even though not already asserted. *See generally* 7 Wright & Miller § 1707.

■ Normally, an interpleader action is concluded in two stages. First, the court determines whether interpleader lies, i.e. are there two or more claims to the stake.

If so, the stakeholder is ordered to pay or deliver the stake into court and is discharged of further liability insofar as the stake is concerned. Other actions against the proceeds may be enjoined and the claimants are ordered to interplead their claims. In the second stage, the adverse claims are adjudicated and the proceeds disbursed. *See generally* 7 Wright & Miller § 1714. The two stages may be consolidated and the entire action may be disposed of at one time. *New York Life Ins. Co.,* 700 F.2d at 95.

This action did not track the above pattern. The court was never requested to determine, nor did it determine, whether interpleader was proper. The court never ordered the deposit of the *res* into the court and no such deposit was made. General was not discharged. Several claimants pleaded their claims, but none were adjudicated.

■ The interpleader action, instead, served, not improperly, as a catalyst for settlement discussions. Some thirteen months after the interpleader complaint was brought, and some six months after the statute of limitations had run as to claims against Delgreco, General adjusted, under the aegis of the magistrate, the claims of the three appearing and claiming defendants. The other defendants, including Schlacter, none of whom had pleaded a claim, were not accommodated in the process. Defendant Schlacter cried, and continues to cry, foul. Her cries are unavailing, for she has pleaded no cognizable manner in which she was wronged.

■ At this juncture, Schlacter would attribute to the procedural, remedial device of interpleader the creation of substantive rights in the *res*. Although her counsel earlier conceded this to be the result of a misconception of the nature of interpleader and the effect of the filing of an interpleader action,[6] she now endeavors to elevate

---

**6.** In the affidavit excerpts reproduced in footnote 5, *supra,* Schlacter's counsel explain their failure both to secure local counsel to answer and to assert a claim in the interpleader action and to institute suit directly against Delgreco on grounds that such was an endeavor to limit needless legal expenses at a time when compromise with General was believed likely. At that

these misconceptions into substantive property rights. She contends that the filing of an interpleader action naming a party as a claimant or potential claimant to the *res* gives that party a substantive right in the *res* and thus, once an interpleader is commenced, the plaintiff is prohibited from settling with some claimants to the exclusion of others.[7] The law is quite otherwise. "[T]he filing of an interpleader suit by the insurer does not confer any additional rights upon the claimants." Appleman, *Insurance Law & Practice*, § 11312, citing *Kaiser v. Prudential Ins. Co. of America*, 272 Wis. 527, 76 N.W.2d 311 (1956).

Under Connecticut law, a liability insurer has a duty to defend and to indemnify its insured. The duty to defend arises when a complaint states a cause of action which, on its face, is within the terms of the policy. *Hogle v. Hogle*, 167 Conn. 572, 356 A.2d 172 (1975); *Missionaries of the Company of Mary, Inc. v. Aetna Cas. & Sur. Co.*, 155 Conn. 104, 230 A.2d 21 (1967). The duty to indemnify embraces the duty to avoid the uncertainties and vexations of trial and settle claims against its insured when reason so requires. *United Serv. Auto Ass'n v. Glens Falls Ins. Co.*, 350 F.Supp. 869 (D.Conn.1972). As the insurer has the sole right to settle claims, within the limits of the policy, it is obliged to exercise that right in a reasonable and prudent manner. An insurer may settle multiple claims and deduct the amount of such settlements from the limit of its liability to indemnify. *Bartlett v. Travelers Ins. Co.*, 117 Conn. 147, 167 A. 180 (1933). An insurer which fails to exercise due care or good faith with respect to opportunities to settle a claim or claims within the policy limits is subject to a direct statutory right of action by a judgment creditor of the insured. Conn.Gen.Stat. § 38–175; *Bourget v. Government Employees Ins. Co.*, 456 F.2d 282 (2d Cir.1972).

General's insurance policy is not claimed to have created a third party beneficiary status for prospective claimants against its insured. A direct claim against General is dependent on establishing the liability of its insured to the claimant who may then, under a subrogation theory, sue the insurer. Conn.Gen.Stat. § 38–175. A "[c]laimant is a stranger to [the] relationship" of insurer and insured. *Bourget*, 456 F.2d at 287, citing Keeton, *Liability Insurance and Responsibilities for Settlement*, 67 Harv. L.Rev. 1136, 1176 (1954). Contrary to Schlacter's assertion, there is no sound basis in law or logic for holding that a prospective claimant has a right in the insurance proceeds of a prospective defendant's liability policy by virtue of the filing of an interpleader action by the insurer. General's resort to interpleader merely afforded the prospective claimants a means of jointly asserting their claims against the policy proceeds. It did not waive its insured's rights. Delgreco is not a party to the suit. By offering to permit the court to allocate the *res* among the claims, General did not create a right in Schlacter or any other prospective claimant to any part of the *res*. If the *res* were deposited, the court could adjudicate the claims and pay out the *res* in accordance with the adjudications. Adjudication of a claim thus includes a determination of the right, if any, of a claimant to any part of the *res*. To argue that the bringing of an interpleader action vests any claimant with a right or interest in the policy proceeds put the cart before the horse. It presumes a favorable adjudication before such has occurred. It disre-

---

early stage of this litigation (Post-Hearing Memorandum of Law on Behalf of Motion to Set Aside the Entry of Default, at 10) counsel further asserted: "This mistaken belief ... was in no way meant to be a waiver of Miss Schlacter's claims. It was simply believed and understood that General Accident would not exhaust its funds without including Miss Schlacter. Thus, the failure to file a formal appearance was, in fact, the result of a misunderstanding not only as regards General Accident's intentions, but

also as regards *the effect of the interpleader action.*" (Emphasis added).

7. *See* Memorandum on Motion for Reargument and to Vacate Plaintiff's Notice of Dismissal, at 17: "Consequently, once the plaintiff commenced this interpleader suit, it could not settle with some of the [defendants/] claimants to the prejudicial exclusion of others."

gards the necessity that a claimant prove his claim. Until she proves her claim, Schlacter cannot have a right in the proceeds even if the proceeds had been deposited in court.

■ An interpleader is analogous to an *in rem* proceeding in that the stakeholder provides the *res* on which the dispute among the claimants is focused. In controversy among themselves, the claimants present adverse claims to the entire or part of the *res*. The rights to the *res*, in whole or in part, are thus adjudicated among the claimants, not as against the stakeholder who by that time has deposited the *res* in court and been discharged in the usual course. Merely being named as a prospective claimant can create no right in the *res* as there is then, and until adjudication, no measure of such a right. Without a deposited *res*, the court has nothing over which to adjudicate a claimant's entitlement.

■ When an insurer brings an action of interpleader to facilitate the handling of multiple claims to a limited fund, it admits its liability as an insurer to make available the proceeds of its policy. It concedes its obligation to pay the proceeds to someone, but concedes no obligation to any one in particular. That obligation accrues only upon the adjudication of conflicting claims, and that adjudication cannot occur absent a timely and formal assertion of a claim against the proceeds on deposit. Thus, where a statutory interpleader action is founded on the diversity of citizenship of one named defendant from the other named defendants, and the limitations period has run before the diverse prospective claimant has asserted his claim, the court is without jurisdiction to hear the matter further. *See Dakota Livestock Co. v. Keim,* 552 F.2d 1302, 1308 (8th Cir.1977).

The failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the *res* can be viewed as forfeiting any claim of entitlement that might have been asserted. Thus, in a statutory action brought by an insurance company to adjust conflicting or potentially conflicting claims to the cash surrender value of policies, our Court of Appeals has noted that the defaults entered against two of the three named defendants "did not make the interpleader action inappropriate but merely expedited its conclusion by obviating the normal second stage." *New York Life,* 700 F.2d at 95. The court thus affirmed a judgment directing that the proceeds already deposited with the court be paid to the sole remaining non-defaulted claimant.

If it would have been proper—had the funds been deposited with the court—for the court, upon the default of Schlacter, to allocate the deposited proceeds among the non-defaulted claimants, it cannot be seriously contended that in the absence of such a deposit, General acted improperly in effectuating a settlement among the non-defaulted claimants without providing for the putative claims of the defaulted defendants including Schlacter. If Schlacter is correct, then the defaulted, non-appearing defendants retain rights in the proceeds, requiring General to withhold settlement negotiation and, in the case of a deposit with the court, requiring the court to stay its hand in adjudicating already-asserted claims. To follow Schlacter's argument to its extreme would contravene and frustrate the purpose of interpleader—an expedited efficient resolution of all claims to the *res*. As long as such a "right" was viable, even absent an appearance and timely pleading of a claim, it would indefinitely preclude a final adjudication of any claim. Such is not the law.

■ Schlacter's failure timely to assert a claim against Delgreco and to answer the interpleader complaint and assert a claim against the proceeds, and the absence of any deposit of the *res* with the court, distinguishes her case from those upon which she relies. Thus, Schlacter cannot take shelter in the holding in *Preferred Risk Mut. Ins. Co. v. Greer,* 289 F.Supp. 261 (D.S.C.1968). There, an insured's motion for an order allowing payment out of the fund to satisfy a settlement as to two of the several claimants was denied as inconsistent with the purposes of interpleader

and prejudicial to the other claimants. The indemnity amount had been deposited and several other claims had been asserted. Had the court given effect to the proposed partial settlement, without adjudicating all other claims, it would have effected a partial allocation of the *res* without determining the propriety of the allocation in relation to the other, unadjudicated claims. The court properly observed that interpleader prevents one claimant from obtaining a disproportionate share of the *res* by allocating the funds proportionately where the value of all the claims exceed the fund. When, as here, the *res* is not on deposit and the settlement encompasses all defendants who have either asserted a claim to the insurance proceeds or—within the statutory period—against the insured, neither reason nor authority suggests the court should interfere with the settlement reached.

Unlike the non-settling claimants in *Greer*, Schlacter cannot complain of any preferential or fortuitous treatment of the claims paid. General's settlement and payment of all of the proceeds to three claimants was the result of her failure to require the deposit of the *res* and then to assert her claim against it. With the *res* on deposit, and thus within the jurisdiction of the court, and her claim properly pleaded against it, she would have forestalled the exhaustion of the *res*. Her dalliance cannot be deemed to create an obligation in General to hold any portion of the proceeds as rightfully hers any more than rightfully the property of any other defaulted prospective claimant. The same reasons defeat Schlacter's protestations that the settlement as to the claims of the other three occupants of the Frisch vehicle was the result of other than good faith, so as to warrant the court's exercise of its equitable authority to order the sum subject to interpleader to be increased by the amount of any such bad faith settlements. *Prudential Ins. Co. v. Bennett*, 299 F.Supp. 451 (S.D.Ga.1969); *Government Employees Ins. Co. v. Lane*, 441 F.Supp. 501 (W.D.Okla.1977). Whether General has acted

properly so as to give rise to any other direct action against General is not before the court. Schlacter's entire claim is premised on her assertion of a right or interest in the indemnity coverage specified in General's policy. She has no such right or interest.

The same reasoning defeats Schlacter's further argument that the "viability" of her claim is not at issue at the first stage of interpleader. The first stage involves a determination as to the "adversity" of the claimants. This inquiry requires a minimal threshold of substantiality in adverse claims, such that the plaintiff's fear of multiple litigation or liability is not without foundation. Upon termination of the action against all defendants but Schlacter, the lack of a *res* on deposit, and the lack of any other claimants, leaves the court without jurisdiction of this matter as an action of interpleader.

■■■ Finally, the same considerations preclude Schlacter's attempt to litigate these issues under the rubric of her claim of conversion. Under the law of Connecticut, an act of conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights, or an act of dealing with the property rights of that person in a manner adverse to him, inconsistent with his right of dominion and to his detriment. *Falker v. Samperi*, 190 Conn. 412, 461 A.2d 681 (1983). Schlacter's hopes or intentions as to the insurance proceeds clearly create no rights thereto. Her claim that General disbursed the funds without a court order is woefully inadequate to state a claim as the court had no jurisdiction over the funds absent their deposit with the clerk. At best, the interpleader provided Schlacter not with a right to any portion of the insurance proceeds, but merely the means to assert her claim to the proceeds; moreover, her right to assert and thereafter prove her claim were forfeited by her failure to assert it in a formal and timely

manner. Relying on her inaction, General and the non-defaulted claimants adjusted their claims and divided the policy proceeds to the exclusion of Schlacter. In so doing, neither General nor the non-defaulted claimants dealt improperly with any property of Schlacter.[8] Thus, her claims—whether in the interpleader action or under the tort of conversion—are unavailing. While it is, of course, true that once an interpleader action is commenced by an insurer, a claimant need not have obtained a judgment against the insured in order to recover against the *res*, entitlement is neither determined nor preserved absent a positive assertion and proof of the claim within the interpleader procedure.

## SUMMARY

The handling and mishandling of this case has caused the complexity with which the court has dealt, at excessive length above. There is no *res* on deposit as to which the court might adjudicate adverse claims. There are no longer two or more adverse claimants to the fund. Schlacter cannot be found to have an interest in the amounts General was obliged to expend to indemnify its insured, Delgreco, or to discharge his liability. Having an inchoate claim against Delgreco in relation to which General might have had a duty to indemnify does not establish in her a right in the proceeds which she may enforce in either the interpleader or conversion actions. Accordingly, both actions are dismissed.

It must be noted that the parties have not distinguished themselves by prompt and proper processing, which might have avoided this result.

SO ORDERED.

---

8. If Schlacter has a right in the *res*, what is that right? She has cited no authority establishing or defining such a right. Clearly she has but an inchoate claim which she might establish by proving her allegations of injury as a result of Delgreco's conduct. Failing such proof, at a second stage of the interpleader process, what should be the disposition of her alleged rightful share of the *res*? Schlacter has no right in the *res* until the court so decrees. The interpleader merely provides her with an orderly method for adjudicating her claim, along with and in relation to all other claims properly asserted. Schlacter's argument is circular and comes to its own conclusion. If effect, she claims a right in the *res* which entitles her to an adjudication of her claim, whereupon she would have a defined right in the *res*.