STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Plaintiff-Respondent,

v.

Margie WARD; Bonnie Ward, a/k/a Mrs. Joey Dodson; and Charles E. Woolf, Administrator of the Estate of Curtis E. Ward, a/k/a Curtis Ward, a/k/a C. E. Ward, Defendants-Appellants.

No. 47838.

Supreme Court of Missouri,

Division No. 1.

Dec. 12, 1960.

James F. KOESTER, St. Louis, for appellants, Ward.

Carter, Fitzsimmons & Brinker, Clayton, for respondent.

HOLMAN, Commissioner.

In this declaratory judgment action plaintiff sought an adjudication concerning its obligation to defend a suit filed by defendants against the administrator of the estate of Curtis E. Ward, deceased, and its liability to pay any judgment that said claimants might obtain therein. All ma-

terial facts were agreed upon. The trial court entered a judgment to the effect that plaintiff was not required to make any defense against, or payment of, the claims of defendants and that said claims were excluded from the coverage afforded by a policy of liability insurance theretofore issued by plaintiff to Curtis E. Ward. Defendants have appealed. This court has appellate jurisdiction because of the amount in dispute.

On October 13, 1957, Curtis E. Ward was driving his automobile northwardly on Highway 61. At a point approximately 80 miles south of St. Louis, Missouri, the Ward automobile collided with another automobile on said highway and Mr. Ward sustained injuries from which he died later that day. Passengers in Mr. Ward's car were his wife Margie, his daughter Bonnie, and Miss Joanne Curtis, all of whom are alleged to have sustained serious personal injuries. Those occupants filed a joint suit against the administrator of the estate of Curtis E. Ward. Therein Margie sought to recover $40,000, Bonnie $20,000, and Joanne $10,000.

Plaintiff disclaimed any liability in regard to the claims of Margie and Bonnie and refused to undertake any defense of their claims as alleged in Counts I and II of the petition in the aforementioned suit. Plaintiff's disclaimer was based upon a policy exclusion clause which provided that "This policy does not apply under * * * (e) coverage A [bodily injury liability] * * * for bodily injury to the insured or any member of the family of the insured residing in the same household as the insured." When the administrator, Charles E. Woolf, failed to make any defense to the claims of Margie and Bonnie, plaintiff instituted this suit against Margie, Bonnie, and Mr. Woolf as administrator, in order to obtain an adjudication as to its obligations under the policy. Mr. Woolf defaulted. Herein we will refer to Margie and Bonnie (appellants) as the defendants.

It is agreed that Margie Ward was the wife of Curtis E. Ward, and, on October 13, 1957, resided with him at 4101 Lafayette Avenue, St. Louis, Missouri; that Bonnie Ward is the daughter of Curtis E. and Margie Ward and had lived with her parents continuously since her birth and, on October 13, 1957, was living with them at the aforementioned address. It therefore appears to be undisputed that on October 13, 1957, defendants were members "of the family of the insured residing in the same household as the insured."

In an effort to avoid the application of the exclusionary provision of the policy invoked by plaintiff, defendants have briefed the contention that said provision is void because it is in conflict with provisions of "The Motor Vehicle Safety Responsibility Law," Section 303.010 et seq., Laws 1953, p. 569, P.P. Vol. 16 V.A.M.S. (unless otherwise indicated all statutory citations herein are to sections of that Act), and is against the public policy of the State of Missouri as evidenced by the provisions of said Act. These contentions are more specifically summarized in the brief as follows: "The conclusion should then follow that either the exclusion is void as against public policy or amended to conform to our statutes and that in either event it must insure the person named therein against the liability alleged herein."

In support of the foregoing contentions defendants point to Section 303.190 which states, in part, that "2. Such owner's policy of liability insurance: * * * (2) Shall insure the person named therein * * * against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle * * *." They state that the claims for relief alleged in their petition are liabilities for damages "imposed by law" against the estate of decedent because the fact that Curtis E. Ward was the husband of Margie and the father of Bonnie would not bar either of said defendants from maintaining the aforementioned suit for damages against his administrator. They cite Ennis v. Truhitte, Mo.Sup., 306 S. W.2d 549, and Brennecke v. Kilpatrick, Mo.

Sup., 336 S.W.2d 68, which support the assertion that the relationship which had existed between defendants and decedent would not prohibit the maintenance of the suit they have heretofore filed. In that connection we note that Bonnie was 21 years of age and employed at the time of the casualty and hence could apparently maintain the action without being required to rely upon the rule stated in the Brennecke case.

Defendants also call attention to the following provision in the policy under consideration: "When certified as proof of future financial responsibility under any motor vehicle financial responsibility law and while such proof is required during the policy period, this policy shall comply with such law if applicable, to the extent of the coverage and limits required thereby, but not in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." As heretofore stated, defendants contend that said policy provision, when considered in connection with the quoted portion of Section 303.190, would constitute an amendment of the policy so as to provide coverage against "liability imposed by law" which would include their claims.

The difficulty with the foregoing contention is that Section 303.190 (upon which they rely) also provides that "A 'motor vehicle liability policy' as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 303.170 or section 303.180 as proof of financial responsibility * * *," and the policy provision defendants rely upon applies only to policies "certified" under a motor vehicle financial responsibility law. There is no contention that the policy involved herein had been "certified" as proof of Mr. Ward's financial responsibility under the provisions of either Section 303.170 or Section 303.180.

Contentions similar to the one under consideration were ruled upon by both the Kansas City and St. Louis Courts of Appeals in the cases of Perkins v. Perkins, Mo.App., 284 S.W.2d 603, and Gabler v. Continental Casualty Co., Mo.App., 295 S.W.2d 194. Each of those cases involved a policy provision very similar to the one we are here considering and in each case the court concluded that under the Missouri Financial Responsibility Act the policy provision did not become effective until the policy had actually been certified as proof of financial responsibility under the Act.

There are many cases in other jurisdictions that have construed similar policy provisions under comparable financial responsibility acts. The holdings in the Perkins and Gabler cases are supported by almost all of those decisions. Fifteen supporting decisions are cited in Perkins, and eight additional ones are cited in Gabler. It would serve no purpose to re-cite those cases herein. Defendants rely upon cases decided by the courts of California which support their contention. See Wildman v. Government Employees' Insurance Co., 48 Cal.2d 31, 307 P.2d 359, and Shapiro v. Republic Indemnity Company of America, Cal.App., 334 P.2d 594. We approve the majority rule. In our opinion it represents a proper application of the policy and statutory provisions involved. The rulings in the Perkins case (upon the point here involved) and Gabler case are approved and are decisive of the present contention.

■ We are also of the opinion that there is no merit in the contention of defendants that the exclusionary provision plaintiff relies upon is void because contrary to the public policy of the state as indicated by the provisions of Section 303.190, subd. 2(2), supra. Since the provisions of said section apply only to policies "certified" under the Act we do not think it is reasonable to conclude that the requirement of said section that "certified" policies insure against "liability imposed by law" would constitute a pronouncement of

a public policy of this state that *all* liability policies issued to residents of this state should so insure. In ruling a similar contention the court, in Barkley v. International Mutual Insurance Co., 227 S.C. 38, 86 S.E.2d 602, 605, stated: "We cannot read into the insurance contract, under the guise of public policy, provisions which are not required by law and which the parties thereto clearly and plainly have failed to include." As indicated, the point must be ruled adversely to defendants.

■ Defendants' next point is that the trial court erred in excluding insurance coverage because the exclusion clause in question is ambiguous and incomplete in that it does not clearly state when the members of the family must be residing in the same household with the insured to avoid coverage. The question is raised as to whether the condition of residence must exist: (a) when the policy is purchased; (b) when the accident occurs; (c) when the cause of action accrues; or (d) during the entire term of the policy regardless of intervening events. In view of the alleged ambiguity it is said that "the clause should be construed most strongly against State Farm, and that under the circumstances, if there is doubt as to the validity or applicability of the exclusion clause, the exclusion clause must fall and this is especially so because the reason for the exclusion clause (the prevention of collusion) no longer exists." In support of that contention defendants cite the case of Giokaris v. Kincaid, Mo.Sup., 331 S.W.2d 633, 639, wherein the following is said: "We think it is well stated in Varble v. Stanley, Mo. App., 306 S.W.2d 662, 665[2] (citing authority): '* * * [A]n insurance policy, being a contract designated to furnish protection will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the in-

surer.'" But there is another principle which should be considered in connection with the rule last quoted. It is that "Where there is no ambiguity, there is no room for construction. Unequivocal language is to be given its plain meaning though found in an insurance contract. State ex rel. New York Life Insurance Co. v. Trimble, 306 Mo. 295, 267 S.W. 876. This is so even when considering a restrictive provision of a policy." State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 127 S.W.2d 675, 676. "And the courts are not authorized to pervert language or exercise inventive powers for the purpose of creating an ambiguity when none exists." Lynch v. National Life and Accident Ins. Co., Mo.App., 278 S.W.2d 32, 34.

To repeat, the clause in question excluded coverage "for bodily injury to the insured or any member of the family of the insured residing in the same household as the insured." We considered this exact clause in the case of Kelso v. Kelso, Mo. Sup., 306 S.W.2d 534, 71 A.L.R.2d 258. In that case it was assumed by all of the parties that the issue was whether the exclusionary condition of residence existed at the time of the injury. That is true in regard to all other cases we have examined which involved similar provisions. No case has been cited in which the question here presented has been decided. However, we think it may be confidently said that the exclusionary clause would be applicable if the conditions therein specified existed at the time of the casualty. To that extent, at least, the provision is not ambiguous. Those conditions admittedly existed (as to both defendants) in the case before us at the time the defendants were injured. In that situation, there is no need for us to speculate as to whether the exclusion would apply if the family and residential conditions did not obtain at the time of injury but existed at some other time. This contention is accordingly overruled.

■ The final point asserted by defendants is that the court erred in applying the exclusionary clause because their

claims for relief did not accrue until long after the death of the insured and at that time they were not residing in the same household as the insured. The contention that their claims did not accrue until long after the casualty is based upon the following portion of Section 516.100, RSMo 1949, V.A.M.S.: "Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment * * *." It is said that defendants' damages were not capable of ascertainment until some time after the day of the collision.

We have concluded that this contention is not meritorious. In the first place it should be noted that the provision relied upon in the foregoing statute is expressly limited in its application to certain designated sections of our Statutes of Limitations. There is no contention in the present case that the claims of defendants are barred by limitations. Furthermore, in any event, it is not necessary that the full and precise extent of the injuries be capable of ascertainment before defendants' claims would accrue. In the suit filed by defendants Margie alleged that she "was thrown in and about said motor vehicle, and against the parts thereof with great force and violence, and as a result thereof was caused to sustain severe injuries; * * * that she has sustained a rupture of her intervertebral discs; that she sustained a concussion to the brain, and injury to the brain; that blood clots formed in both legs * * *." Similar injuries were alleged by Bonnie. Injuries of that nature are so apparent that, in our judgment, the claims for relief to recover damages resulting therefrom would accrue contempo-

raneously in point of time with the casualty itself. See Allison v. Missouri Power & Light Co., Mo.App., 59 S.W.2d 771[6].

In the case of Giokaris v. Kincaid, supra, 331 S.W.2d loc. cit. 640, it was observed that "the purpose of such clauses has been considered to safeguard the insurer against collusion and the natural partiality of an insured to members of the insured's household or family circle." In connection with their last point defendants say that since Mr. Ward died shortly after the casualty the reason for which the household clause was inserted in the policy no longer exists as there can be no collusion between deceased and defendants and therefore (under those circumstances) the clause should not be enforced. We do not agree. The right of plaintiff to interpose that clause as a defense against defendants' claims does not depend upon the continued existence of a state of facts which would make the enforcement of said clause necessary in order to accomplish some particular purpose for which the provision may have been included in the policy. A contract of insurance is a voluntary contract and "as long as the terms and conditions made therefor are not unreasonable or in violation of legal rules and requirements, the parties may make it on such terms, and incorporate such provisions and conditions, as they see fit to adopt." 44 C.J.S. Insurance § 223, p. 928. We accordingly rule that the fact that Mr. Ward died on the day of the casualty is not a valid reason for the nonenforcement of the household clause under the circumstances existing herein.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.