PROTECTIVE CASUALTY
INSURANCE COMPANY,
Plaintiff-Appellant,

v.

Ronald and Patricia W. COOK, et al.,
Defendants-Respondents,

State Farm Mutual Insurance
Company, Intervenor.

No. 52094.

Missouri Court of Appeals,
Eastern District,
Southern Division.

June 30, 1987.

Motion for Rehearing and/or Transfer
Denied July 30, 1987.

Application to Transfer
Denied Sept. 15, 1987.

State Farm Mutual Insurance Company (State Farm). The judgment increased the liability limits of a policy issued by Protective to its insured to conform to the limits established by Missouri's Motor Vehicle Safety Responsibility Law. We reverse.

## II

On March 4, 1983, plaintiff issued a comprehensive automobile insurance policy to Crystal Rector, the wife of Daryl Dean Rector, insuring her 1975 LeSabre Buick. The policy provided that Protective would pay "damages for bodily injury or property damage for which the law holds you [the insured] responsible because of a car accident involving a car we insure."[1] The policy limit was $10,000 for damages to each person and $20,000 for each "accident." The policy was made and issued to Crystal Rector at a time when she and her husband resided in Fort Pierce, Florida and covered the period of February 24, 1983 through August 24, 1983. The contract of insurance was made in Florida. Soon after the contract was made, the Rectors moved to Missouri.

In a section of the policy relating to "Limits of Liability," the policy in the paragraph entitled "Financial Responsibility Laws" provided as follows:

> If you're required to show proof of financial responsibility for the future because of car accidents, traffic violations or other state motor vehicle requirements, we'll certify this policy as proof. When we certify this policy as proof, all the terms and conditions of this insurance will be amended to comply with the requirements of such law. But the terms and conditions of this insurance will not be amended for any limits of liability in excess of the minimum limits required by such law. YOU MUST REIMBURSE US IF WE HAVE TO MAKE A PAYMENT THAT WE WOULD NOT HAVE TO

Paul Roger Ellis, Lichtenegger, Phillips & Ellis, Jackson, for plaintiff-appellant.

Robin E. Fulton, Maurice B. Graham, Schnapp, Graham, Reid & Fulton, Fredericktown, for defendants-respondents Cook, and Settle.

Keven P. Schnurbusch, Marie A. Woodruff, Evans & Dixon, St. Louis, for intervenor.

SIMEONE, Senior Judge.

## I

This is an appeal by Protective Casualty Insurance Company (Protective) from an order of the circuit court of Madison County entered on July 11, 1986 granting summary judgment in favor of intervenor,

---

1. The plaintiff's petition in interpleader alleges that the policy provided that "Plaintiff would pay on behalf of its insured all sums that the insured should become legally obligated to pay as damages because of bodily injury to which its insurance applied, caused by accident and arising out of the ownership, maintenance or use of any covered automobile." This language is not contained in the "Clear, Simple Everyday Talk Protective Car Policy" issued to Crystal Rector.

MAKE IF THIS POLICY WERE NOT CERTIFIED AS PROOF.

Under the "General Policy Provisions," there is a provision entitled "Out-of-State Insurance." That provision states:

If this policy provides liability insurance and if you are traveling in a state which has compulsory motor vehicle insurance requirements for non-residents, we will automatically provide the required insurance. However, this amendment will provide only excess insurance over any other valid and collectible insurance.

On March 25, 1983, a collision occurred at the intersection of Highway 67 and Route "H" in St. Francois County in Missouri. The collision involved the insured vehicle owned by Crystal Rector, which was driven by her husband, Daryl Dean Rector with her permission, and a 1973 Chevrolet Monte Carlo, operated by Douglas G. Settle. In the Rector vehicle were passengers Bill Thomure, Fred Thomure and Paul Thomure. In the Seattle vehicle were his wife Susan, Ronald Cook and his wife Patricia. Both drivers and all the passengers in both vehicles were injured. Subsequently, Daryl died from unrelated causes.

In due time Ronald and Patricia Cook filed suit for damages for personal injuries against the estate of Daryl Dean Rector and their insurer, Cameron Mutual Insurance Company under the uninsured motorist provisions of their insurance policy.[2] The Cooks' case is the subject of *Cook v. Pedigo*, 714 S.W.2d 949, 951 (Mo.App.1986).

Susan Settle also filed suit in St. Francois County against the estate of Daryl for personal injuries she allegedly sustained as a result of the collision. Although Douglas Settle and Bill, Fred and Paul Thomure were injured, they filed no claims against the estate of Daryl Rector or Douglas Settle.

In this posture of the case, Protective filed its "Petition for Interpleader" on May 1, 1985 in the circuit court of Madison County against Ronald and Patricia Cook, Douglas and Susan Settle and Bill, Fred and Paul Thomure alleging the above facts. Protective later amended the petition on March 5, 1985. The second petition for Interpleader alleged the above facts and further alleged that "all" of the defendants "have or may have claims against the fund [of $20,000] which will subject Plaintiff and its insured [Crystal Rector] to multiple and possibly conflicting claims and to multiplicity of suits." The petition stated that "certain" of the "defendants" in the interpleader action have called on Plaintiff to settle their claims out of the $20,000. Plaintiff then paid into the registry of the court the sum of $20,000. It is to be noted that Protective sought an order (1) requiring the various defendants—claimants and potential claimants—to interplead and settle among themselves their rights and claims to the $20,000 fund, (2) enjoining and restraining the claimants from instituting or "prosecuting further" any suit on account of the accident or occurrence, (3) enjoining and restraining the claimants from instituting or prosecuting further any proceeding against plaintiff on account of the policy and (4) discharging plaintiff from any "further liability" because of the payment of the proceeds of the policy into the registry of the court.

On March 5, 1986, State Farm filed its motion to intervene in the plaintiff's interpleader action. In its motion to intervene, State Farm alleged that (1) the collision involving the Rector and Settle vehicles occurred in St. Francois County on March 25, 1983, (2) plaintiff, Protective, had filed an interpleader action, (3) Susan Settle had filed her personal injury action against the estate of Daryl Dean Rector and State Farm "claiming that the insurance policy issued by Protective contained liability lim-

---

**2.** State Farm's brief states that Ronald and Patricia Cook filed suits against "Daryl Dean Rector and their insurer, Cameron Mutual Insurance Company, under the uninsured motorist provisions of their insurance policy. (L.F. 8)." The Legal File does not indicate that suit was filed against Cameron. The reference in the brief is to the first petition filed May 1, 1985 which only states that suit was filed against the estate of Daryl. The "Petition" filed on March 5, 1986 makes the same allegations.

its below those required by Section 379.203 R.S.Mo.,[3] and (4) under the terms of the Protective policy and the "statutory law of the State of Missouri," [4] "Daryl Dean Rector [sic—Crystal?] was not an uninsured motorist under the terms of the State Farm Policy, hence there was no coverage under that policy. In its motion, State Farm alleged that it "might thus be bound by any final judgment entered" and "any judgment in interpleader will, as a practical matter, impair and impede the ability of State Farm to protect its interests."

State Farm also filed an answer to the Petition in interpleader. In its answer State Farm referred to its policy insuring the Settle's 1973 Chevrolet involved in the accident which defined an uninsured motor vehicle [the Rector vehicle] as a vehicle insured wherein the "limits of liability are less than required by the Financial Responsibility Act of the state where your car is mainly garaged; ...." State Farm further alleged that under the terms of the Missouri Safety Responsibility Law in effect in 1983 (§ 379.203) the law required a minimum liability coverage of $25,000 per person and $50,000 per accident. According to State Farm, under the terms of the Protective policy "Financial Responsibility Laws" clause, then, the limits of the Protective policy would be automatically raised

to provide such $25,000/$50,000 coverage. Thus, the vehicle operated by Daryl Rector was an "insured" automobile under Missouri law and, therefore, the uninsured motorist provisions in the State Farm policy were not applicable. State Farm prayed that (1) the court enter its order establishing that the policy issued by Protective be modified under the terms of that policy and under the law to contain limits of $25,000 and $50,000, (2) it be dismissed from the action,[5] and all the defendants-claimants or potential claimants be restrained from proceeding on the State Farm policy and (3) upon final hearing that the plaintiff, Protective, and each of the claimants be enjoined from instituting or maintaining any action against State Farm.

The trial court granted State Farm's motion to intervene on March 20, 1986. On April 8, 1986, State Farm filed its motion for summary judgment. The thrust of that motion was that under the terms of the Protective policy and the statutory law of the State of Missouri, the purported $10,000/$20,000 liability limits under the Protective Casualty Insurance Company policy as a matter of law would be raised to the Missouri required $25,000/$50,000 limits so that Daryl Dean Rector was not an uninsured motorist under the terms of the State

---

3. That section provides that no automobile liability insurance policy shall be issued unless coverage is provided in amounts of not less than $25,000 for one person and $50,000 for two or more persons pursuant to § 303.030 for the protection of persons insured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.

4. Section 379.203, R.S.Mo.1986 refers to § 303.030 R.S.Mo.1986. The motion to intervene does not otherwise specify which "statutory law" of Missouri would raise the policy limits to the required $25,000/$50,000 limits. State Farm is apparently relying on § 303.030 as amended in 1981, not § 303.030 effective July 1, 1987. Both statutes are printed in the 1986 statutes. Section 303.030, refers to § 303.170. That section provides that proof of financial responsibility may be furnished by filing with the director of revenue the written "certificate" of any insurance carrier duly authorized to do business in this state "certifying that there is in effect a motor vehicle liability policy" for the benefit of the person required to furnish proof of financial responsibility. A "motor vehicle liability policy"

means an owner's or operator's policy which insures the vehicle for $25,000 and $50,000 for two or more persons. Section 303.025, which is effective July 1, 1987, provides that no owner shall operate a vehicle without financial responsibility. This provision is distinct from §§ 303.030, 303.170 and 379.203. Those provisions, the law in effect at the time of the accident involved here, are triggered only when a collision had occurred and only when a policy is "certified" in writing to the director of revenue. An owner or operator may avoid suspension of a license or registration by proof of financial responsibility under § 303.170 and § 303.190. See N.E. Risjord and J.M. Austin, *The Financial Responsibility Condition of the Automobile Liability Policy*, 25 U.M.K.C.L.Rev. 83 (1956); *Wisdom v. Stonewall Ins. Co.*, 139 Ill.App.3d 1082, 94 Ill.Dec. 412, 487 N.E.2d 1289 (1986) and cases cited therein. Otherwise, the standard Financial Responsibility Condition in the policy, Form SR-22 is not triggered. *See* Risjord and Austin, 25 U.M.K.C.L.Rev., *supra.*

5. State Farm was not made a "party" to the action filed by Protective.

Farm policy and that no coverage would be provided by the latter policy.

State Farm therefore moved that the Court enter an order of summary judgment in its favor establishing that the Protective policy issued to Crystal Rector was modified "under the terms of that policy" and "under the law" to contain limits of $25,000 per person and $50,000 per accident and for other relief.

On July 11, 1986, the court sustained State Farm's motion for summary judgment. This appeal by Protective followed.

### III

On appeal, Protective contends that the trial court erred in (1) sustaining State Farm's motion for summary judgment for the reason that the Protective policy is clear and unambiguous so that the court had no power to rewrite the insurance contract by raising the limits of the policy, (2) applying the wrong choice of law rule for the reason that the court applied Missouri law rather than the law of Florida where the contract was entered into; (3) granting summary judgment for the reason that Missouri law does not require the policy limits to be increased when the policy was made and delivered in another state, nor does Missouri's public policy require the limits be increased.

State Farm and the Cooks, *et al.,* respondents, contend that the court did not err because (1) the Protective policy indicates its intent to raise the policy limits, (2) the court properly applied the Missouri law which requires that an insurer increase the policy limits to comply with our Safety Responsibility Law and its statutory limits.

■ We initially note that State Farm has standing to intervene to have determined the limits of the Protective Insurance liability policy. This case is unlike the decisions of *St. Paul Fire & Marine v. Med. Protective Co.,* 675 S.W.2d 665 (Mo. App.1984) and *Hartford Ins. Co. v. Federal Ins. Co.,* 682 S.W.2d 871 (Mo.App.1984). In those cases the insurance companies prematurely sought to have construed other insurance to determine a question of liabili-

ty in the absence of the insured. The insured had not tendered a defense and there were a number of contingencies involved so that we held that the insurance companies in those cases did not have standing to construe the provisions of other insurance under the Declaratory Judgment Act, because those plaintiffs were "strangers to the contract to be construed." That is not the situation here. State Farm has an "interest" in the provisions of the Protective policy for the reasons that it may be "bound" or its rights impaired or impeded because the amount Susan Settle may be entitled to and the limitation of liability of Protective in the interpleader action would be made certain. The interpleader action may well determine the amount of the "fund" to which Susan Settle may be entitled. Hence State Farm has an "interest" in the fund in the interpleader action. Its ability to protect that interest may as a practical matter be impaired or impeded. Rule 52.12(a); *cf. Alsbach v. Bader,* 616 S.W.2d 147 (Mo.App.1981) and cases cited therein.

### IV

■ A preliminary issue which must be determined is whether the plaintiff, Protective Insurance Company, may properly utilize the procedural remedy of interpleader under Rule 52.07, and whether the courts have jurisdiction to entertain such a remedy in these circumstances. This is not a situation where a defendant tortfeasor "may be" liable to many individuals injured by the acts of the tortfeasor. This is a situation where an insurance company with limited coverage tenders into court the limits of its liability under a policy—a fund— and the alleged victims of the alleged tort have claims, not reduced to judgment, against a tortfeasor. Some of the individuals in this case have already brought action, some have not.

Rule 52.07 provides in part that:
Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability ...

This Rule has a long history and it is the culmination of centuries of judicial decisions relating to the efficacious remedy of interpleader.

The best exposition of the modern elements of interpleader is *Plaza Express Company v. Galloway,* 365 Mo. 166, 280 S.W.2d 17 (banc 1955).[6] All the strict requirements of equitable interpleader ,as summarized by Pomeroy[7] relating to (1) the same thing, debt or duty, (2) the claimants' interests derived from a common source, (3) the plaintiff not claiming any interest in the subject-matter, and (4) the plaintiff being merely a stakeholder, have been abolished. Instead, all the essentials have been reduced to the first sentence of the Rule that "persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." *Plaza Express Company, supra,* 280 S.W.2d at 24.

This essential is, however, subject to the further requirement that "double or multiple liability" means exposed to double or multiple recovery for a single liability or obligation. *Shaw v. Greathouse,* 296 S.W.2d 151, 153 (Mo.App.1956).

Whether a liability insurance company may file an interpleader action when its insured faces multiple tort claims that add up to more than the policy limits has "troubled both the courts and the draftsmen of interpleader statutes and rules for many years." 7 C.A. Wright, A.R. Miller, M.K. Kane, *Federal Practice and Procedure* § 1707 at 522 (2nd ed. 1986) (Wright). Much depended upon the particular wording of the statute or rule. *See* annot., *Interpleader By Insurer,* 19 ALR Fed 166 (1974). In *Klaber v. Maryland Cas. Co.,* 69 F.2d 934 (8th Cir.1934), interpleader was denied, under an early federal statute, to a stakeholder faced with various tort claims against its insured; *Wright, supra* at 522. But in *Pan American Fire & Casualty*

*Co. v. Revere,* 188 F.Supp. 474 (E.D.La. 1960), the court held that, under the federal statute which authorizes interpleader if persons "may claim" to be entitled to a fund, the liability insurer could maintain interpleader where the various tort claims exceed the limits of the policy. The court, in a carefully reasoned opinion held that the remedy satisfied the federal statute, 28 U.S.C.A. § 1335 and Fed.R.Civ.P. 22, the counterpart of Missouri Rule 52.07.

The Supreme Court of the United States addressed the propriety of an interpleader action in *State Farm Fire & Casualty Company v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). The *Tashire* case involved an action brought in the federal court by an insurance company which insured a truck driver whose truck was involved in a collision with a bus. Many of the bus passengers were injured and some had filed suit against the owners of the bus and truck. The Supreme Court upheld the action of interpleader even though the claims had not been reduced to judgment and even in the absence of a direct action statute. The Court, however, limited the remedy to the interpleader action only, so that the victims could not be enjoined from making claims against the insured in a court of their own choosing. 87 S.Ct. at 1206; *Wright, supra,* § 1707 at 524, § 1717 at 618; 3A J.W. Moore, *Federal Practice,* § 22.08[1] at 22–54. The Court then summarized the purpose of permitting interpleader actions in cases such as *Tashire:*

> Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy. *Tashire,*

---

**6.** For the strict essentials of interpleader and its development to its modern form see Chafee, *Modernizing Interpleader,* 30 Yale L.J. 814 (1921).

**7.** 4 Pomeroy, *Equity Jurisprudence,* § 1322 (5th Ed.1941).

*supra*, 87 S.Ct. at 1205 (footnotes omitted). See Annot., 70 ALR 2d 416 (1960).

The Eighth Circuit in *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357, 19 A.L.R. Fed. 152 (8th Cir.1966), addressed this same issue. The court held that the district court had jurisdiction over an interpleader action filed by an insurer to compel the determination of the insurer's liability as to multiple potential claims against its insured arising out of crop spraying. The Court of Appeals traced the history of interpleader, the various federal statutes and Rule 22. The Court held that under Fed.R. Civ.P. 22 that interpleader was proper because the remedy is not only to protect a fundholder from double or multiple liability but also to protect them from the trouble and expense of double or multiple litigation. "We hold interpleader to be justified in the present situation." 363 F.2d at 366.

In *General Acc. Group v. Gagliardi*, 593 F.Supp. 1080 (D.Conn.1984), the court ruled that in a multiple car collision, interpleader was the proper remedial device to secure a prompt and inclusive determination in a single action of the rights of all parties claiming an interest in the stake, and that the courts should not hesitate to allow interpleader when some or all of the claims are prospective even though not already asserted. 593 F.Supp. at 1087.

The only analogous Missouri decision is *M.F.A. Mutual Insurance Company v. Hill*, 320 S.W.2d 559 (Mo.1959). In *Hill*, the Supreme Court held that interpleader relief could not be afforded. The court relied upon *Plaza Express Company v. Galloway, supra,* indicating that that court held that being "exposed to double liability within the statutory meaning is an exposure to a double recovery on a single liability." 320 S.W.2d at 563. The Supreme Court in holding that interpleader was not an appropriate remedy concluded that "[i]t should be noted that the instant plaintiff does not contend that its liability, if any, is single and that it is nevertheless being exposed to double recovery." *Id.*

*Hill* is clearly distinguishable from the case at bar. The plaintiff in *Hill* did not contend it was liable on a single liability but, rather was exposed to double or multiple liability; the insurer did not deposit any fund into the registry of the court. Hence *Hill* is not a true interpleader action.

Decisions of this court have recognized that interpleader is proper in circumstances such as presented here. See *Kansas Fire and Casualty Company v. Koelling*, 729 S.W.2d 251 (Mo.App.1987) and *Brake v. M.F.A. Mutual Insurance Company*, 525 S.W.2d 109 (Mo.App.1975).

We therefore conclude that under the authorities and under the circumstances here interpleader is a proper remedial device under Rule 52.07.

The modern role of the interpleader as discussed in *Tashire* and *Underwriters at Lloyds, supra* is to avoid undue actions when there are several claims or prospective claims against the same fund. Consideration of the *Tashire, Underwriters* and *Revere* principles of modern interpleader and considerations of judicial administration demonstrate the soundness of the view we take and are consistent with the language of the Rules relating to interpleader.

## V

Having determined this procedural issue, we now turn to the merits and the central issues of (1) whether the policy provisions are governed by the law of Florida where the insurance contract was made, and (2) whether the limits of the Protective policy must be increased to the provisions embodied in the Missouri law.

Before entering into a discussion of the merits of these issues, we state the guidelines of review which we must follow.

First, the scope of our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment is to be affirmed unless the trial court erroneously declared or applied the law. *Grassham v. Farm Bureau Town & Country Ins.*, 684 S.W.2d 892, 895 (Mo.App.1984).

Second, summary judgment, pursuant to Rule 74.04, is an appropriate procedure where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Chapman v.*

*Auto-Owners (Mut.) Ins. Co.,* 684 S.W.2d 335, 336 (Mo.App.1985); *Halford v. American Preferred Ins.,* 698 S.W.2d 40, 42 (Mo. App.1985). The record must be viewed in the light most favorable to the party against whom judgment is made. *Chapman, supra,* 684 S.W.2d at 336. There must be genuine and material issues of fact. The summary judgment procedure is a salutary one. It separates the formal from what is genuine and substantial so that only the latter may subject a party to the burden and expense of a trial. Such a judgment may be rendered where no genuine issue of material fact is shown. *Hurwitz v. Kohm,* 516 S.W.2d 33, 36 (Mo.App. 1974).

■■■ Third, our function is not to rewrite a contract of insurance. It is our duty to interpret and enforce it as written. *Brugioni v. Maryland Casualty Company,* 382 S.W.2d 707 (Mo.1964). We only construe the contract as written. *Central Surety & Ins. Corp. v. New Amsterdam Cas. Co.,* 359 Mo. 430, 222 S.W.2d 76, 80 (banc 1949). The court cannot construe the policy to afford coverage where it does not exist, and words must be given their plain and ordinary meaning. *American Ins. Co. v. First Nat. Bank in St. Louis,* 409 F.2d 1387, 1390 (8th Cir.1969).

■■ As to the choice of law, prior to modern developments in conflict of laws, the Missouri decisions adhered to the general principle that the law of the state in which a contract was made or entered into governed the contract, its nature, validity, obligation, interpretation, legal effect and all matters of substance involved therein. *Kelsall v. Riss & Co.,* 165 S.W.2d 329 (Mo. App.1942); *In re DeGheest's Estate,* 360 Mo. 1002, 232 S.W.2d 378 (1950). But with the seminal decision in *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969) adopting the "most significant relationship" test based upon § 145 of the Restatement (Second) of Conflict of Laws (1971), Missouri has adopted a more flexible approach. *Byrn v. American Universal Ins. Co.,* 548 S.W.2d 186 (Mo.App.1977).

In *National Starch and Chemical Corp. v. Newman,* 577 S.W.2d 99, 102 (Mo.App. 1978), the Western District held that the Restatement (Second) of Conflict of Laws applies in Missouri to both "tort and contract actions." The pertinent provisions in the Restatement applicable to contracts are §§ 6, 145, 186, 188, and 222. These lengthy provisions need not be repeated. They are detailed in *National Starch and Chemical Corp.,* and *Byrn v. American Universal Ins. Co., supra.* Insofar as contracts are concerned, the principles stated in § 6 of the Restatement underlie all rules of choice of law. Comment on Subsection (1), § 188, *Restatement, supra; see* R.J. Weintraub, *Conflict of Laws,* § 7.30 at 363 (1980).

*See also Nakao v. Nakao,* 602 S.W.2d 223, 226–27 (Mo.App.1980); *Bigham v. McCall Service Stations,* 637 S.W.2d 227 (Mo.App.1982)—applying § 188; *Crown Center v. Occidental Fire & Casualty Co.,* 716 S.W.2d 348 (Mo.App.1986)—adopting § 188 in insurance cases.

This modern, flexible, "most significant relationship" approach was adopted in *Bell v. State Farm Fire & Cas. Co.,* 527 F.Supp. 300 (W.D.La.1981). That decision, a wrongful death action, dealt with the issue whether Florida law should govern an uninsured motorist provision in a policy of insurance entered into in Florida limiting coverage to $10,000 or whether Louisiana law providing coverage in excess of the uninsured motorist's limits should apply.

The insured was a citizen of Florida and his insurance policy was written and delivered to him there. The decedent was a resident of Louisiana and the collision occurred there. The district court held, after applying the most significant relationship test that Louisiana law was applicable. The court examined the factors relevant to the choice of law embodied in Section 6 of the Restatement and concluded that Louisiana law applied. The court, however, did not discuss the specifics of the Florida or Louisiana law, nor the specific provisions of the policy.

We conclude that the trial court properly chose to apply Missouri law to this case. All of the parties involved in the accident, including State Farm's insureds, were Mis-

souri residents. The accident occurred in Missouri, Protective Casualty is a Missouri corporation, State Farm was, at the time the accident occurred, doing business in Missouri, and at the time Protective Casualty issued its policy to Crystal Rector in Florida, she informed Protective Casualty of her intent to move to Missouri. The fact that all of the individuals involved in the accident were Missouri residents is also significant. Hence, on balance, it is clear that Missouri has the "most significant relationship" with the transaction. *Cf. Lilienthal v. Kaufman,* 239 Or. 1, 395 P.2d 543 (1964).

## VI

Having concluded that the law of Missouri is applicable, we turn to the core issue of whether the trial court properly granted summary judgment increasing the limits of liability to $50,000 under the Protective policy and whether that judgment is consistent with the Missouri Motor Vehicle Safety Responsibility Law. The resolution of this issue depends upon the construction and application of the Protective Insurance Company's policy provision relating to "Financial Responsibility Laws"[8] which provides that if Rector is required to show proof of financial responsibility for the future, "we'll certify this policy as proof. When we certify this policy as proof, all the terms and conditions of this insurance will be amended to comply with the requirements of such law...."

This provision was added in the April 1, 1955 edition of the standard basic automobile liability policy and relates to the language of the Financial Responsibility Condition. It was a significant revision of the standard policy. *See* N.E. Risjord and J.M. Austin, *The Financial Responsibility Condition of the Automobile Liability Policy,* 25 U.M.K.C.L.Rev. 83 (1956). The language of the Financial Responsibility Condition in the 1955 edition of the standard policy is identical to the paragraph entitled "Financial Responsibility Laws" in the Pro-

tective policy. Under this provision for financial responsibility "for the future," the most common method for furnishing evidence of financial responsibility is the filing of the certificate (commonly referred to as an "SR–22") that there is in force a liability policy in the amounts and subject to the requirements of financial responsibility.

In the various states of the United States there are two types of laws directed to the problem of the financially irresponsible motorist generally referred to as (1) "compulsory insurance" and (2) "financial responsibility acts." A number of states have enacted laws which require an owner or operator to carry liability insurance in order for the vehicle to be operated on the public highways. This is what Missouri will have effective July 1, 1987. A "compulsory insurance law" is distinguished from a "financial responsibility law." *See* generally 12A G.J. Couch, *Insurance Law,* §§ 45:679, 45:721 (2nd ed. 1981) and 7A Am.Jur.2d, *Automobile Insurance,* § 20, *et seq.* at 464 (1980). Such "Motor Vehicle Safety Responsibility Law," § 303.010, *et seq.,* is intended to discourage careless driving by requiring proof, after an accident, of financial responsibility as a condition to avoiding suspension or revocation of a license or owner's registration. This type of law has a basic flaw in that the motorist is entitled one "free" accident or one "first bite." Couch, *supra,* § 45:721 at 352.

Under the terms of the Safety Responsibility Law, before an owner or operator may be relieved of the sanctions of suspension or revocation of a license or registration, certain contingencies must come into play. The critical feature is that to avoid suspension or revocation, the owner or operator must comply with certain requirements contained in the law. Under the Safety Responsibility Law, after an accident occurs, the license of the operator, or the registration of the owner or in the case of a nonresident operating in Missouri,

**8.** It is to be noted that effective July 1, 1987, the General Assembly has adopted "The Motor Vehicle *Financial* Responsibility Law"—§ 303.010 *et seq.,* R.S.Mo.1986. At the time of the collision involved here, Missouri had and, until July 1, 1987 has a "Motor Vehicle *Safety* Responsibility Law." § 303.010 *et seq.,* R.S.Mo.1986.

are subject to suspension or revocation unless "security" is deposited with the director of revenue. Section 303.030.2, R.S.Mo.1986. Under the Safety Responsibility Law, when the owner or operator has had his registration or license suspended or revoked by the director, and desires to have them restored, or desires not to have the license or registration suspended, the owner or the operator must submit to the director "proof of financial responsibility," § 303.020(10) R.S.Mo.1986. This "proof of financial responsibility" is not required or mandatory, but the operator or owner is not restored to a license or registration unless and until this proof of financial responsibility is given. Section 303.110 R.S.Mo.1986. One means of proof of financial responsibility is to have in effect an automobile liability policy, § 303.030.4, with limits of not less than $25,000 for one person injured, or $50,000 for two or more persons injured. The liability policy must, however, be properly certified in writing to the director of revenue. Sections 303.170, 303.-190, R.S.Mo.1986.

The limitation requirements of the Safety Responsibility Law apply to those policies which are certified in accordance with the statutes. *Gabler v. Continental Casualty Company*, 295 S.W.2d 194, 197 (Mo.App. 1956); *State Farm Mutual Automobile Insurance Company v. Ward*, 340 S.W.2d 635, 638 (Mo.1960); *Perkins v. Perkins*, 284 S.W.2d 603, 609–610 (Mo.App.1955). Only a "certification" of a liability policy triggers the invocation of the statutory requirements under the Safety Responsibility Law. *American Standard Insurance Company of Wisconsin v. Rider*, 475 S.W.2d 2d 418, 425 (Mo.App.1971) and authorities cited therein.

State Farm looks to the financial responsibility clause of the Rector Protective Casualty policy to support its contention that the Protective Casualty policy limits are automatically raised to $50,000. Particularly, it cites the portion of that clause which provides: "when we certify this policy as proof, all the terms of this insurance will be amended to comply with the requirements of such [financial responsibility] law."

No specific Missouri case has addressed the issue of whether the $25,000/$50,000 provisions of the Safety Responsibility Law may effect increasing the liability limits of an insurance policy entered into in another state. But, in *Wisdom v. Stonewall Ins. Co., supra,* the Illinois Appellate Court had occasion to determine whether the provisions of Missouri Safety Responsibility Law were applicable to a collision which occurred in Missouri and which injured a Missouri resident when the driver of the vehicle, which collided with the Missouri resident, was killed in the accident. The policy in *Wisdom* had a financial responsibility clause identical to that contained in Protective's policy. The injured Missouri plaintiff brought an action in Illinois against the deceased driver's insurance company contending that the Missouri Safety Responsibility Law applied. The appellate court in Illinois examined the provisions of the Missouri Safety Responsibility Law and held that the Missouri Law was not applicable because the law is not triggered unless and until an operator or owner certifies that he has liability insurance with the director of revenue. The court refused to raise the liability limits. The court noted that the Safety Responsibility Law did not require compulsory insurance. Instead, its provisions come into play only after the occurrence of a motor vehicle accident. The court explained the requirements of the Missouri statute. The court concluded that the Safety Responsibility Law did not require the insurance company to provide $25,000 coverage under the policy. The court concluded by stating that virtually every other court which considered comparable financial responsibility laws is in accord. *See Grimes v. Government Employees Insurance Company,* 402 N.E.2d 50 (Ind.App.1980); (no increase in limits); *American Hardware Mutual Insurance Company v. Bradley,* 153 N.J. Super. 72, 379 A.2d 53 (Ct.App.Div.1977); *Galford v. Nicholas,* 224 Md. 275, 167 A.2d 783 (1961); *cf. McCann v. Continental Casualty Company,* 8 Ill.2d 476, 134 N.E.2d 302 (1956). This conclusion comports with many analogous decisions in

Missouri holding that the Safety Responsibility Law is not effective until policy is certified. *Perkins v. Perkins*, 284 S.W.2d 603 (Mo.App.1955)—Safety Responsibility Law did not apply, because no evidence that policy had been required and certified as proof of financial responsibility pursuant to the Safety Responsibility Act; *Gabler v. Continental Casualty Co., supra; State Farm Mutual Automobile Ins. Co. v. Ward, supra; Universal Underwriters Ins. Co. v. Weber*, 701 S.W.2d 588 (Mo.App. 1985); *Transport Indemn. Co. v. Teter*, 575 S.W.2d 780, 787 (Mo.App.1978). *See* annot., *Policy Provision Extending Coverage to Comply with Financial Responsibility Act as Applicable to Insured's First Accident*, 8 A.L.R.3d 388 (1966), for a survey of cases addressing the certification requirement.

Respondents rely upon *Allstate Ins. Co. v. Sullivan*, 643 S.W.2d 21 (Mo.App.1982). In *Allstate*, this court held that a policy issued by Allstate covers a person who rented an automobile from Allstate's insured. We discussed the public policy of the Safety Responsibility Law, but concluded that "Allstate's policy here was by its express language issued to comply with the Safety Responsibility Law." 643 S.W.2d at 23. In construing the policy, this court held that the policy had to be construed to comply with the Safety Responsibility Law even though the policy had not been certified as provided in that law. In *Universal Underwriters Ins. Co. v. Weber, supra*, the Southern District noted that *Allstate Ins. Co. v. Sullivan* did not cite or refer to *State Farm Mutual Automobile Insurance Co. v. Ward, supra*, and is "not consistently followed."

It is clear that a long line of Missouri cases construing the Safety Responsibility Law as shown above holds that the law and the conditions stated therein must be satisfied. However desirous we may be to increase policy limits to protect victims of motorists, we are bound by the law as adopted by the General Assembly and by the many precedents construing that law. Missouri case law establishes that mandatory insurance coverage is not the public policy of this state and that one may therefore lawfully own or operate an automobile in Missouri without having first secured automobile liability insurance. *Harrison v. MFA Insurance Company*, 607 S.W.2d 137, 143 (Mo. banc 1980). Under the statutes, procurement of insurance is voluntary, not compulsory. *Perkins v. Perkins*, 284 S.W.2d 603, 609 (Mo.App.1955). Under the facts and all the circumstances in this case, and under the law, we are compelled to hold that the summary judgment increasing the limits of Protective's policy is improper under the standards of *Murphy v. Carron, supra*.

There were no facts presented that Daryl or Crystal Rector had in any way complied with the Safety Responsibility Law to give "security" or that anyone certified a policy or submitted proof of financial responsibility, or in any way complied with the contingencies of the law in effect at the time of this unfortunate accident. Daryl could not since he is deceased and according to the record before us Crystal did not. *Cf. Wisdom, supra*.

We must give credence to the language of the Missouri Supreme Court in *State Farm Mutual Automobile Ins. Co. v. Ward, supra*, that "We cannot read into the insurance contract, under the guise of public policy, provisions which are not required by law and which the parties thereto clearly and plainly have failed to include." *Ward*, 340 S.W.2d at 638–39.

■ State Farm also has made an attempt to have the policy limits raised, by citing the previously quoted "Out-Of-State Insurance" provisions, which provide that if the insured is travelling in a state that has compulsory insurance requirements for non-residents, the insurer will automatically provide coverage. This provision is inapplicable to this situation because the Rectors were not non-residents of Missouri, and they were not "travelling" in Missouri; they were Missouri residents.

Therefore, under the above authorities, we conclude that the policy limits in the Protective policy cannot be increased; the Rector vehicle, then, is an uninsured ve-

hicle within the definition of State Farm's policy.

### VII

Under all the circumstances we conclude that (1) interpleader is a proper remedy; (2) State Farm had the right to intervene in this cause and had standing to request the court to declare the rights and liabilities of Protective insurance; (3) the trial court properly applied Missouri Law; but (4) the court erroneously applied the law in increasing the limits of the Protective insurance policy because the contingencies embodied in the Safety Responsibility Law have not been fulfilled.

The summary judgment entered by the trial court is reversed.

DOWD, P.J., and KAROHL, J., concur.